```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
NABEEL MAZLOUM a/k/a NABIL MOHAMMAD      :
ALMAZALOUM,                              :
                     Plaintiff,          :
                                         :    10 Civ. 9347 (DLC)
          -v-                            :
                                         :    OPINION AND ORDER
INTERNATIONAL COMMERCE CORP., et al.,    :
                                         :
                     Defendants.         :
                                         :
----------------------------------------X
```

APPEARANCES:

For plaintiff:
Rimonda K. Dalloul
265-86 Street
Brooklyn, New York 11209

For defendant Ekram J. Miller:
Mark S. Indelicato
Hahn & Hessen, L.L.P.
488 Madison Avenue
New York, New York 10022

DENISE COTE, District Judge:

   Plaintiff Nabeel Mazloum ("Mazloum") brings this diversity action against International Commerce Corporation ("ICC"), Ekram J. Miller a/k/a Ekram J. Manafzadeh a/k/a Ekram Doe ("Miller"), and two unnamed defendants, alleging breach of contract, fraud, conversion, conspiracy to defraud, and a violation of the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349. Miller has moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In his

1

reply brief, Miller seeks sanctions pursuant to Federal Rule of Civil Procedure 11 and to strike portions of the amended complaint and opposition brief.

BACKGROUND

I.   General Background

The following is derived from the allegations of the amended complaint filed March 31, 2011 and assumed to be true for the purposes of this Opinion.  This action arises out of the parties' creation of a joint venture company, International Ayah Company ("Ayah"), to build housing and hotels in Syria.  Mazloum is a Syrian citizen and conducts business from Riyadh, Saudi Arabia.  ICC is a Delaware Corporation with its principal place of business in Maryland.  Miller is an executive of ICC and has his business address at ICC's location in Maryland.  Miller has several aliases and identities which he uses to defraud investors.  The two unnamed defendants are business partners, agents or employees of ICC and Miller.

The parties signed their contract forming Ayah on November 26, 2007, and Ayah was incorporated on November 27.  On February 18, 2008, Mazloum contributed $1.5 million to Ayah by depositing that amount into an account at HSBC Bank in New York City.  The defendants failed to perform under the contract or, in effect, to do anything with the joint venture.  Mazloum requested that

the defendants either perform under the contract or refund his contribution, but they refused to do so.  Miller and the two unnamed defendants then transferred assets from Ayah to their personal accounts in order to hide business assets from creditors.

II.  Facts Alleged as to Personal Jurisdiction Over Miller

In the amended complaint, Mazloum made several allegations that purport to confer jurisdiction over Miller.  He claims that Miller lives at 127 Avenue of the Americas in New York City under an alias; was the subject of a criminal trial under an alias in the Southern District of New York in the 1970s, an appeal from which was decided by the Second Circuit in 1979; and has a civil judgment entered against him, also under an alias, in New York State Supreme Court in 1999.  Mazloum also alleges, "upon information and belief," that Miller is an executive of Aminco Trading Corporation ("Aminco"), which is incorporated and does business in New York; and that he has helped establish New York business ventures and given speeches in New York as recently as 2009.

These allegations are supplemented in the affirmation of Mazloum's counsel offered in opposition to the motion to dismiss.  Upon information and belief, she asserted that Miller had personally appeared in New York repeatedly in connection with a real estate project called Sky Gate.  In connection with

3

Sky Gate, Miller had meetings with politicians in New York City in 2008 and 2009.  In an exhibit attached to the affirmation, excerpts of a report of a British arbitral tribunal reviewing a dispute related to the Sky Gate project, it is noted that Miller had meetings in New York in November 2006.  Mazloum's counsel also alleges that Miller has formed a new corporation, International Development Corporation ("IDC"), and through IDC, has signed a number of contracts in New York that are governed by the laws of the State of New York.

    The affidavit that Miller filed in support of his motion to dismiss touches on many of these allegations.  His testimony is that he is the president and sole shareholder of ICC, but that neither he nor ICC has a presence or conducts business in New York.  Miller's place of business and home is in the State of Maryland, where he has exclusively lived since 1993.  He has not maintained a residence in New York since 1979.  Neither he nor ICC maintains an office, have employees, lease property, warehouse goods, have a registered agent, advertise, pay taxes or have bank accounts in New York.  He specifically stated that neither he nor ICC has a bank account at HSBC Bank in New York, and that he does not maintain a domicile at either 127 or 1270 Avenue of the Americas in New York City.  But, he notes that 1270 Avenue of the Americas was the address of Aminco, a company that he did indeed own.  Aminco went out of business in 1979 and

4

was not involved in the transaction giving rise to this action.

III. Procedural History

Mazloum filed the first complaint in this action on December 15, 2010. On February 23, 2011, Miller filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Mazloum filed an amended complaint on March 31.

Miller filed a motion to dismiss the amended complaint on May 16. On July 7, Mazloum filed his opposition in the form of an affirmation by his counsel. At the initial pretrial conference on July 15, Mazolum's counsel requested that this opposition be withdrawn as she had gathered new information relevant to the motion. This request was granted, and a new opposition affirmation signed by Mazloum's counsel was filed on July 22. Miller submitted a reply on August 5.

DISCUSSION

I.   Standard of Review

Miller has moved pursuant to Federal Rule of Procedure 12(b)(2) to dismiss Mazloum's claims against him for lack of personal jurisdiction. "Where, as here, a district court . . . relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction." Southern

New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (citation omitted).  "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  Id. (citation omitted).  The pleadings and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in its favor.  Id.

On the other hand, a court "will not draw argumentative inferences in the plaintiff's favor."  In re Terrorist Attacks on September 11, 2001, 538 F.3d 71, 93 (2d Cir. 2008) (citation omitted).  Furthermore, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would "lack the factual specificity necessary to confer jurisdiction."  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998).  In resolving Rule 12(b)(2) motions, a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Id. (citation omitted).

In connection with the issue of personal jurisdiction, Mazloum relies largely on allegations that are based solely on "information and belief."  Even if these allegations are credited as true, they only demonstrate that Miller had a presence, at one time, in New York, not that he currently is present in this State.  Furthermore, there are no allegations

6

that Miller had a presence in New York in connection with the Ayah joint venture.  In the face of the testimony of Miller specifically denying any presence in New York, Mazloum did not endeavor to allege any further facts supporting personal jurisdiction in his opposition brief, and therefore cannot carry his burden.

II.  Personal Jurisdiction

In a diversity case, the issue of personal jurisdiction must be determined according to the law of the forum state. D.H. Blair & Co., Inc., v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).  A district court may exercise jurisdiction over any defendant who would be subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located. Fed. R. Civ. P. 4(k)(1)(a).  "If the exercise of jurisdiction is appropriate under [the state's statutes], the court then must decide whether such exercise comports with the requisites of due process." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (citation omitted).

A.  General Personal Jurisdiction

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2853 (2011).  In addition, N.Y. C.P.L.R. § 301 "confers jurisdiction over a defendant when it is engaged in such a continuous and

systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in the jurisdiction." Dardana Ltd. v. Yugankneftegaz, 317 F.3d 202, 205 n.9 (2d Cir. 2003)(citation omitted).  "Where such a showing is made, a defendant may be sued in New York on causes of action wholly unrelated to acts done in New York."  Id. (citation omitted).[1]

Mazloum has not shown that Miller's domicile is in New York.  He claims, simply, that Miller lives at 127 Avenue of the Americas in New York City under an alias.  There is no testimony by anyone with personal knowledge or other evidentiary support for this contention.  Miller, on the other hand, testified by affidavit that he has not maintained any residence in New York since 1979, and specifically noted that the 1270 Avenue of the Americas address is the address of a former company which went out of business in 1979.  This specific testimony denying any current presence at that address was not confronted by Mazloum when given the opportunity to respond in his reply brief.

Mazloum has also failed to make any allegation that Miller has been engaged in a continuous and systematic course of doing

---

[1]  Whether systematic "doing business" contacts can supply personal jurisdiction over an individual, rather than a corporate defendant, is an unsettled question of New York law. Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985).  The New York Court of Appeals has not resolved the issue.  See Laufer v. Ostrow, 55 N.Y.2d 305, 313 (1982) (assuming the applicability of § 301 to individuals but not deciding the question).

business in New York to warrant a finding of his presence in this State to confer general jurisdiction.  Mazloum's allegations that Miller is an executive of Aminco (which folded in 1979) and IDC, that he has established New York business ventures and made speeches in New York as recently as 2009, and that he had meetings in 2006, 2008 or in relation to Sky Gate fail to show that he has had a systematic and continuous presence in this State at any time since the filing of this action.[2]  Miller specifically testified that he does not have any business dealings in New York.  Mazloum has not carried his burden of demonstrating Miller's "continuous and systematic" business dealings in New York which could grant this Court general personal jurisdiction.

    B.    Specific Personal Jurisdiction

New York's long-arm statute provides for specific personal jurisdiction over certain non-domiciliaries.  N.Y. C.P.L.R. § 302(a).  Section 302(a)(1) allows the exercise of personal jurisdiction over an out-of-state defendant if the defendant "transacts any business within the state" and the cause of action "aris[es] from" that business activity.  N.Y. C.P.L.R. §

---

[2] The affirmation also includes many allegations that Miller had engaged in past criminal activities unrelated to the Ayah joint venture in other countries and states, none of which is relevant to personal jurisdiction in New York.  Also not relevant to personal jurisdiction are the allegations in the affirmation concerning Mazloum's New York conviction in the 1970s.

302(a)(1). In order to meet the transacting business element, "it must be shown that a party purposely availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." D.H. Blair, 462 at 104 (citation omitted). "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." Id. at 105 (citation omitted). "To meet the 'arising out of' requirement . . . there must be 'a substantial nexus' between the transaction of business and the claim. Id. (citation omitted).

 The claim arises out of the Ayah joint venture. The only New York business transaction alleged that is connected with Ayah was Mazloum's deposit of $1.5 million into an HSBC account in New York. The allegations in the complaint themselves suggest that this account was not Miller's, as Mazloum alleged that Miller and the unnamed individual defendants transferred funds from Ayah to their personal accounts at a later time, not that the New York accounts were owned by these defendants.

 Under N.Y. C.P.L.R. § 302(a)(2)-(3), a plaintiff can establish jurisdiction over the defendant if the plaintiff demonstrates either that the defendant committed the alleged tortious act in New York or if

 (1) the defendant's tortious act was committed outside

>   New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.

Penguin Group (USA) Inc. v. American Buddha, 640 F.3d 497, 499 (2d Cir. 2011) (per curiam) (citation omitted).  To determine "whether there is an injury in New York sufficient to warrant § 302(a)(3) jurisdiction, courts must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury."  Penguin Group (USA) Inc. v. American Buddha, 609 F.3d 30, 39 (2d Cir. 2010) (citation omitted).  "This 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort."  Id. 39-40 (citation omitted).  "The original event occurs where the first effect of the tort that ultimately produced the final economic injury is located."  Id. at 40 (citation omitted).

As noted above, Mazloum has not alleged any acts of Miller in New York arising from the Ayah transaction.  Nor has he alleged that any tortious act of Miller caused injury to a person or property in New York.  The complaint and opposition affidavit are both remarkably devoid of any reference to where the parties met and transacted the business deal which led to the creation of Ayah.  There is therefore nothing indicating

that Miller's alleged tortious conduct took place or caused injury in New York.[3]

Mazloum requests that this Court order Miller to submit to discovery on the subject of jurisdiction rather than granting his motion.  But when, as here, a plaintiff has not even made a prima facie showing of personal jurisdiction, it is "well within" a court's discretion to deny jurisdictional discovery. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 255 (2d Cir. 2007).

III. Motion to Strike and for Sanctions

Miller moved in his reply brief to strike portions of the amended complaint and the opposition affirmation that he suggests are irrelevant and scandalous pursuant to Federal Rule of Civil Procedure 12(f).  Many of the allegations in Mazloum's filings were, indeed, not helpful in establishing personal jurisdiction and do reference possible criminal or tortious activity by Miller.  But these allegations are not so irrelevant to the claims in this case or so scandalous that they are

---

[3]   In so far as it could be said that the "original event" of the tort of conversion alleged in the complaint was the deposit by Mazloum of $1.5 million into an account at an HSBC Bank in New York, Mazloum would still fail to obtain jurisdiction, as he has not alleged specific facts that Miller expected or should reasonably have expected that his actions would have consequences in New York, or that Miller derives substantial revenue from interstate or international commerce, both of which are necessary to obtain jurisdiction under N.Y. C.P.L.R. § 302(a)(3).

unfairly prejudicial to Miller.  Therefore, Miller's motion to strike is denied.

Miller also requests in his reply brief that sanctions be imposed pursuant to Federal Rule of Civil Procedure 11, arguing that Mazloum had no good faith basis to pursue this litigation in New York, as any inquiry into prevailing case law would have alerted him that New York courts would not have personal jurisdiction over Miller.  Any Rule 11 motion must be brought as a separate motion and filed only after the party against whom sanctions are sought has been given 21 days to withdraw or correct a pleading the movant alleges violates Rule 11(b).  <u>Lawrence v. Richman Group of CT LLC, et al.</u>, 620 F.3d 153, 156 (2d Cir. 2010).  Because Miller has failed to comply with the procedural requirements of Rule 11, it is unnecessary to address the merits of his request for sanctions.

CONCLUSION

Miller's May 16, 2011 motion to dismiss is granted.  The Clerk of Court will remove him as a defendant from this case.

Miller's August 5 motion to strike and request for sanctions are denied.

Dated:  New York, New York
        November 7, 2011

                               _____
                                       DENISE COTE
                               United States District Judge